Luis **BONILLA, et al., Plaintiffs, Appellees,**

v.

**VOLVO CAR CORPORATION, Defendant, Appellant.**

Luis **BONILLA, et al., Plaintiffs, Appellees,**

v.

**TREBOL MOTORS CORPORATION, et al., Defendants, Appellees.**

Nereida Melendez, Rafael Perez–Bachs, Ruben T. Nigaglioni, Manuel Fernandez–Bared, Jeanne Habib–Figueroa, Abelardo Ruiz–Suria, Francisco Ojeda, Antonio A. Arias–Larcada and Mcconnell Valdes, Appellants.

Luis **BONILLA, et al., Plaintiffs, Appellees,**

v.

**TREBOL MOTORS CORPORATION, et al., Defendants, Appellees.**

Ricardo **Gonzalez–Navarro and Conchita Navarro De Gonzalez, Defendants, Appellants.**

Nos. 97–1599, 97–1600, 97–1790.

United States Court of Appeals, First Circuit.

Heard Dec. 2, 1997.
Decided July 28, 1998.

See also: 150 F.3d 62, and 150 F.3d 76.

Gael Mahony with whom Michael D. Vhay, Andres W. Lopez, Anne L. Showalter, Hill & Barlow, P.C., Rafael Perez-Bachs, Nereida Melendez-Rivera and McConnell Valdes were on brief for defendant Volvo Car Corporation.

Allan Kanner with whom Conlee Schell Whiteley, Elizabeth B. Cowen, Allan Kanner & Associates, P.C., Paul H. Hulsey, Frederick J. Jekel, Theodore H. Huge, Ness, Motley, Loadholt, Richardson & Poole, P.A., Jose F. Quetglas Jordan, Eric Quetglas Jordan, Zygmunt Slominski, Quetglas Law Offices, Daniel Harris and Law Offices of Daniel Harris were on brief for plaintiffs Luis Bonilla, et al.

Michael J. Rovell with whom Jewel N. Klein and Law Offices of Michael J. Rovell were on brief for defendants Ricardo Gonzalez-Navarro and Conchita Navarro de Gonzalez.

Before SELYA, Circuit Judge, CAMPBELL,* Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

This opinion is a companion to two others issued today, growing out of the same district court case. In No. 97–1135, we are reversing the principal judgment against Volvo. In Nos. 97–1140 and 97–1143, the principal judgment against Trebol and the Gonzalez defendants is being vacated and the matter remanded for further proceedings as to damages, subject to the possibility that proceedings against Trebol may be stayed under the bankruptcy laws; that opinion also dismisses the plaintiffs' cross-appeal in No. 97–1145.

This final volume in the trilogy concerns appeals by Volvo (No. 97–1599), Volvo's attorneys (No. 97–1600), and the Gonzalez defendants (No. 97–1790) directed to a

---

* Senior Circuit Judge Levin H. Campbell heard oral argument in this matter, but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

sanctions order and an attorney's fee order, entered together in the district court on March 27, 1997. The effect of the two orders taken together was to award attorney's fees and costs in favor of the plaintiffs in the amount of $3,518,844.41.[1] In setting forth the history pertinent to the orders under review, we assume familiarity with our two opinions issued this day in Nos. 97–1135, 97–1140, 97–1143 and 97–1145.

Between the filing of the original complaint on June 16, 1992, and the start of trial on June 24, 1996, the plaintiffs conducted extensive discovery. Rancorous disputes ensued. According to the district court, there are 500 docket entries that relate to discovery matters. On several occasions the district court made preliminary references to alleged misconduct by one or more of the defendants with a promise of future attention to the matter and possible sanctions.

After discovery was completed and the case proceeded to trial, the issue of sanctions reemerged. On July 2, 1996, the seventh day of trial, the district judge announced, *sua sponte* but outside the presence of the jury, that he had examined documents filed under seal by Trebol in August 1995 comprising invoices sent by AUM to Trebol and purporting to be genuine Volvo invoices for cars shipped by Volvo to Trebol. A number of these invoices, as we now know, included inflated figures significantly exceeding the original invoice prices. The true prices were shown on invoices for the same sales sent directly by Volvo to Trebol.

Volvo had earlier resisted producing to plaintiffs its own copies of the invoices it had sent directly to Trebol on the ground that they would simply duplicate invoices that Trebol itself had been asked to produce. On the morning of July 2, the district judge said that when Volvo objected to this earlier production request, Volvo "knew" that its own production of the invoices was not a moot issue and also "knew" that the invoices produced by Trebol did not include specified cost information. The court said that it

would keep this in mind when deciding on the nature of sanctions to be imposed thereafter. The next day, July 3, 1996, the plaintiffs filed a motion for sanctions, and the court reported that it would sanction Volvo by an instruction to the jury that it could draw a negative inference that the unproduced documents were harmful to Volvo's case. The court issued an order to this effect on July 12, 1996.

Thereafter, during the trial, the district court limited Volvo's attempt to cross-examine certain of plaintiffs' witnesses on topics involving the relationship between Volvo and AUM. The judge was seemingly prompted by what he thought was Volvo's alleged misconduct relating to the Volvo–Trebol invoices. But it is clear from the transcript that the question intermittently became confused with a different objection made several times by the plaintiffs during Volvo's cross-examination, namely, that Volvo had not disclosed to plaintiffs information relating to payments received by Volvo from AUM.

Then, after receiving further information from Volvo, the district court, on July 17, 1996, resolved this separate quarrel and determined that Volvo had produced the Volvo–AUM payment records. On July 23, 1996, the court reverted to the original dispute regarding the invoices and entered an order accepting the explanation of Volvo's counsel that he had not known that the invoices produced by Trebol were false AUM invoices and that he had objected to plaintiffs' document request in good faith. The court said that it was withdrawing its earlier determination of sanctions. The jury was so advised, although Volvo says that it was still prejudiced by the episode.

Following the jury verdict on damages against Volvo on July 30, 1996, plaintiffs filed a motion on August 15, 1996, seeking attorney's fees and costs under RICO, 18 U.S.C. § 1964(c). This motion was primarily directed against Volvo but stated in a footnote that Trebol and the Gonzalezes were jointly and severally liable for amounts owed by Volvo. Like Volvo, Trebol and the Gonzalezes op-

---

1. The judgment appealed from, reflecting the award of attorney's fees and costs, was entered on April 29, 1997. The district court increased the award to $3,556,334.41 by an amended judgment entered on May 6, 1997; that amended judgment is also the subject of the appeals.

posed the motion. On August 16, 1996, plaintiffs filed another motion seeking attorney's fees and costs against Volvo's counsel under 28 U.S.C. § 1927 or, in the alternative, under the court's inherent powers, as a sanction for vexatious litigation. Volvo opposed the motion for sanctions.

At this time, no final judgment as to damages had yet been entered against Trebol or the Gonzalez defendants and the plaintiffs' August 16 motion did not make any such sanctions request with respect to Trebol or the Gonzalez defendants. There were various additional filings, but no hearing. On March 27, 1997, the district court issued the two orders that are the subject of the present appeals.

. The first opinion and order ("the sanctions order"), is 70 pages long and is directed to plaintiffs' August 16, 1996, motion against Volvo for attorney's fees and costs under 28 U.S.C. § 1927 or under the court's inherent powers as a sanction for vexatious litigation. Although the plaintiffs' motion had sought as a sanction to impose liability on Volvo's *counsel,* the court noted that Volvo itself had opposed the motion and stated that Volvo itself had engaged in sanctionable conduct and that all of the co-defendants were responsible because they had conducted a joint defense.[2]

The court then reviewed a series of incidents that it deemed to evidence vexatious conduct, beginning with Volvo's original objection to producing the Volvo–Trebol invoices. The court said that "Volvo's recalcitrance in producing the invoices it sent to Trebol" meant that "the double invoicing [*i.e.,* the false AUM invoice scheme] nearly went undetected." It conceded its earlier withdrawal of sanctions based on this episode but said that this merely affected jury instructions and "left open" the question whether the court would impose sanctions on Volvo and its counsel "for their negligence."

The court went on to discuss under nine further headings a number of other episodes in which Volvo had (according to the court) improperly delayed proceedings or otherwise

engaged in misconduct. These events include persistent objections to bringing Swedish residents to be deposed in Puerto Rico, delay in providing plaintiffs with a document index, failing to provide information material to class certification, submission of Swedish documents without translation, and frivolous motion practice, including a motion that the court require all attorneys *pro hac vice* to sign every filing.

Although almost all of the examples involved Volvo, the court concluded by finding that all the "codefendants' compliance with their discovery obligations and their conduct generally during this litigation were dilatory, uncooperative and obstructionist." As already noted, plaintiffs had not at this stage sought sanctions against Trebol or the Gonzalez defendants, nor had the court warned the defaulting defendants that it was now considering sanctions against them.

The court then turned to remedy. Pointing out that the plaintiffs were already entitled to attorney's fees and costs under RICO, the court said that the only sanction it would impose for the litigation misconduct of all of the defendants was as follows:

> [I]n adjudicating codefendants' objections to plaintiffs' motions for attorneys' fees, particularly with respect to the rates and the number of hours spent on this case, the Court will view plaintiffs' requests indulgently.... Codefendants should now be barred from attempting to reduce those attorneys' fees by objecting to the rates and hours charged. The Court will not permit plaintiffs to recover for fees that are patently excessive, but it will adjudicate plaintiffs' requests for attorneys' fees recognizing that plaintiffs' attorneys spent many additional hours litigating this case because of the codefendants' failure to produce all relevant information willingly, quickly, and without continuous prodding from the Court.

In its second opinion and order ("the award order"), the court addressed the amount of reimbursement due to the class

---

**2.** The judge's order suggests that the award may have been against counsel as well as the defendants. However, the judgment incorporating the award runs only against the defendants. In an abundance of caution, Volvo's counsel nevertheless have appealed.

fund for plaintiffs' attorney's fees and costs under the RICO statute. RICO provides that an injured party may recover treble damages "and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). The district court read this provision to include "reasonable" attorney's fees and those costs contemplated by 28 U.S.C. § 1920.

In fixing reasonable attorney's fees, the court repeated its earlier observation that as a sanction for abuse of discovery practices, the court proposed to look indulgently at the hours worked by plaintiffs' counsel and the rates that counsel sought to charge. It said that to the extent that the reasonableness of a rate or the amount of time spent on the task was in dispute, the court would resolve the matter in favor of the plaintiffs. It then made detailed computations as to specific hourly rates and hours without further explicit reference to the sanction issue.

On its appeal, Volvo objects to the sanctions order and the award order on a number of grounds: that the district court gave Volvo no notice that it was considering sanctions for conduct other than that identified in plaintiffs' motion for sanctions; that it wrongly failed to afford an evidentiary hearing on misconduct issues; that Volvo had violated no court orders and did not engage in deliberate misconduct and was not responsible for misconduct of codefendants; and finally, that enhancing the attorney's fees was neither a permissible nor a proportionate sanction for the alleged misconduct.

The Gonzalez defendants have also appealed, arguing that the enhancement against them was improper on three grounds: that they had been given no notice or opportunity to be heard on sanctions against them; that they could not be held responsible for misconduct of Volvo; and that the court was not entitled to enlarge attorney's fees for anyone's alleged misconduct and in any event had granted excessive fees by resolving uncertainties in favor of plaintiffs. Because the Trebol companies were assertedly in bankruptcy, they were not included in the judg-

ment for attorney's fees and costs, and Trebol has filed no appeal from this judgment.

■ Before turning to the challenges by defendants to the sanctions and award orders, we have to consider whether these orders present live controversies in light of our reversal of the principal judgment against Volvo and our vacation of the principal judgment against the other codefendants. *See North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). As to Volvo, the award order and subsequent judgment granting attorney's fees and costs are undermined by our earlier opinions: under RICO, attorney's fees and costs are awarded only to a plaintiff who establishes liability and injury. Because of our *Volvo* decision, plaintiffs now cannot prevail against Volvo on the merits.[3]

■ The situation is otherwise as to the remaining defendants. As a result of their default and our ruling upholding the sufficiency of the labeling claims, the remaining defendants have been held liable to plaintiffs; and by defaulting those defendants have also conceded an express factual allegation in the complaint, namely, that as a result of defendants' violations the plaintiff class members "have been injured in their property." Accordingly, there is no apparent reason why the attorney's fee order should not be reviewable on the merits as to the Gonzalez defendants (it was not reduced to judgment against Trebol).

■ As for the sanctions order, its only effect was enhancement of the award of attorney's fees and cost by resolving doubts in favor of plaintiffs; no other sanction was imposed. Therefore, the sanctions order has a current immediate impact on the Gonzalez defendants but not on Volvo (since the attorney's fee award as to it must be reversed) nor on Trebol (because no judgment as to attorney's fees has been entered against Trebol). Nevertheless, even as to Volvo and Trebol, the sanctions order is potentially significant.

While the sanction remedy chosen by the district court is no longer viable against Vol-

---

**3.** Similarly, 28 U.S.C. § 1920, which the district court also cited in making its award of costs contemplates costs in favor of the prevailing party.

vo, there is no obvious reason why the district judge could not now frame a different sanction remedy—assuming that Volvo has properly been found to have committed misconduct. Trebol's prospective liability for attorney's fees remains once the bankruptcy bar is lifted; thus, the sanction order also has a foreseeable impact on Trebol if allowed to stand. Thus, even if the sanctions order has an immediate impact only upon the Gonzalez defendants, it also has a significant likely impact upon Volvo (as the basis for an alternative sanction remedy) and upon Trebol (because of the impact on Trebol's liability for attorney's fees).

Accordingly, we turn to the merits of the sanctions and attorney's fee orders and conclude at the outset that the sanctions order is flawed for two separate reasons. The first reason is that there has been inadequate notice and opportunity on the part of the defendants to defend against the sanctions determination; the second is the automatic attribution of fault to all defendants. We address each point in turn.

■ Our first concern is that Volvo has been condemned at least in part for conduct as to which it had no warning that any defense was required. As for Trebol and the Gonzalez defendants, it appears that at no time before the sanctions order was issued were they or their counsel formally advised that any sanctions order against them was being sought. When they objected to the court on this ground after the order was entered, their motion for reconsideration was tersely overruled.

We have previously noted "the general desirability and sometime necessity of affording notice and an opportunity to be heard when monetary sanctions are imposed." *Media Duplication Servs., Ltd. v. HDG Software, Inc.*, 928 F.2d 1228, 1238 (1st Cir.1991). The court has laid down no "per se rule," *id.*, because circumstances are so various: the nature and complexity of the misconduct, the severity of the sanction, whether the misbehavior took place in the presence of the judge, and similar considerations all play a role. *Id.* And notice and an opportunity to defend do not necessarily entail an evidentiary hearing. *Id.* But here, as in *Media Duplication* itself, "[c]ircumstances ... indicate that the procedure followed was inadequate." *Id.*

In particular, the district court made determinations on a number of serious charges; yet, as to some (in Volvo's case) and all (the case of the other defendants) there was no prior notice of the charges. Further, the judge did not explain which determinations in granting attorney's fees were affected by the sanctions remedy; but the amount of attorney's fee award was substantial and a sanction may have had an important effect. Finally, based on prior incidents in the case, where apparent misconduct turned out to be a misunderstanding, *see, e.g.,* p. 90 above, notice and a full opportunity for explanation would not necessarily have been without purpose.

Wholly independent of the lack of notice and opportunity to defend, the court's sanctions order is flawed because it attributes misconduct to all codefendants indiscriminately without adequate supporting findings. It holds that because the defendants conducted a joint defense—itself a very elastic notion that could embrace a number of quite different relationships—each defendant was therefore automatically responsible for any misconduct in discovery or other proceedings committed by another defendant.[4] The district court relied on this concept in imposing sanctions against Volvo for misconduct of Trebol and the Gonzalezes, and against Trebol and the Gonzalezes for Volvo's misconduct.

There may be instances in which one codefendant is liable for sanctions for the litigation-related misconduct of another defendant, but it would take findings as to knowledge and participation or acquiescence far more specific and detailed than a simple reference to a joint defense. Codefendants cooperate all the time, but that does not mean that one defendant is automatically responsible for

---

4. It is not clear that there was any formal written joint defense agreement. The district court may have been referring to working and financial arrangements on the defense side, but its opinion is not specific.

misconduct of another—of which it may have no knowledge or as to which it may have played no role, active or passive. There is not much precedent on this issue but what there is supports the defendants, and the matter is clear enough in principal. *See Independent Fire Insurance Co. v. Lea,* 979 F.2d 377, 379 (5th Cir.1992); *Lemelson v. Bendix Corp.,* 104 F.R.D. 13, 18 (D.Del. 1984).[5]

Both flaws—lack of notice and opportunity to defend and unsupported attribution of blame—can be obviated by proceedings on remand. Volvo and the codefendants now know precisely which episodes of misconduct are charged against them, and can inform the district court of their versions of each episode, of the proof they may wish to offer in an evidentiary hearing or otherwise, and of any legal arguments against imposing sanctions on defendants. If sanctions are proposed against counsel, they too are entitled to notice and an opportunity to respond. Whether an evidentiary hearing may be required is a matter for the district court to decide in the first instance.

The attorney's fee award must also be reconsidered. To the extent that it rests upon the sanctions order, the flaws in the sanctions order infect the attorney's fee order as well; we have no way to isolate fee determinations so affected from others that were not. Further, the amount of damages that plaintiffs may collect is now changed from a certain to an uncertain figure. So far as the extent of success may have some bearing on the attorney's fees to be awarded, the award of attorney's fees might need to await the re-determination of damages. *See generally* 1 Derfner & Wolf, *Court Awarded Attorney Fees* para. 8.07 (1997).

These considerations require that the judgment awarding attorney's fees be vacated as to the Gonzalez defendants and remanded for further proceedings. As to Volvo, the judgment is reversed outright since no attorney's fees can now be awarded against Volvo under the RICO statute. The

Trebol defendants remain potentially liable for attorney's fees but any proceedings to determine their liability is subject to the lifting of the bankruptcy bar. It would be possible to stop at this point but, since the issue could easily recur on remand, we think it useful to say something about a remaining legal challenge to the attorney's fee award pressed by Volvo and the Gonzalez defendants.

■ Both Volvo and the Gonzalez defendants' claim that the district court had no authority to "enhance" an award of RICO attorney's fees and costs as a sanction for litigation misconduct. Sometimes attorney's fees and costs are awarded as a sanction to offset specific added expenses directly caused by an adversary's litigation misconduct; but this is not what the district court's order did. Rather, the court said that for the entire case, it would resolve legitimate doubts about attorney's fees and hours in favor of the plaintiffs.

In defending this sanction, the plaintiffs point to the very wide latitude normally allowed to district courts in crafting sanctions. *See, e.g., Poulin v. Greer,* 18 F.3d 979, 984 (1st Cir.1994); *Thibeault v. Square D Co.,* 960 F.2d 239, 243 (1st Cir.1992). The defendants point to the language of the RICO statute providing for attorney's fees, which (and here we agree with the district judge) implicitly refers to reasonable attorney's fees and nothing more. Our own view is that, while "resolving doubts in favor of one side" is problematic and fraught with perils when used as a sanction, the remedy itself is not automatically inconsistent with RICO; whether a particular award is unreasonable depends on the facts.

On remand, this "resolving doubts" remedy—whatever its legality—is no longer available as a sanction against Volvo: since it has prevailed on the merits, there will be no RICO award of attorney's fees and costs against it. As to the codefendants, the remedy might be available, assuming misconduct found after a proper proceeding. Still, given

---

**5.** The district judge may well have had reasons for thinking that one defendant did know of, and participated in, individual acts of misconduct that the judge correctly found to have been committed by another defendant. If so, findings to support that attribution should have been provided.

the uncertain legal status of this remedy, the district court may want to consider whether it might be best simply to decide fees and hours on the merits, assuming that plaintiffs do qualify as the prevailing party, and fashion some other, more conventional sanction for any misconduct (as the court in all events must do vis-à-vis Volvo, should it find sanctions warranted).

Nothing we have said in this opinion should be taken to reflect on the able district judge who presided in this extraordinarily difficult case. Without ourselves suggesting misconduct by parties or counsel, we have seen enough to conclude that a complex case was rendered even more complicated than necessary by various gambits on both sides, including not only discovery tactics but also the proliferation of collateral fraud charges and the remarkable eve-of-trial default. A burdened trial judge is entitled to more cooperation than the district court here received.

The judgment entered April 29, 1997, as amended by the judgment entered on May 6, 1997, awarding attorney's fees and costs is *reversed* as to Volvo and *vacated* as to the Gonzalez defendants, and the matter ·is *remanded* to the district court for proceedings consistent with this opinion.

*It is so ordered.*