**PAN AMERICAN GRAIN MANUFAC-TURING COMPANY, Plaintiff,**

v.

**PUERTO RICO PORTS AUTHORITY, et al., Defendants.**

**Nos. CIV. 96–1499 HL, CIV. 96–1501 HL.**

United States District Court,
D. Puerto Rico.

Jan. 5, 2000.

Antonio Moreda–Toledo, Moreda & Moreda, Jose F. Sarraga–Venegas, San Juan, Derek A. Walker, New Orleans, LA, for Pan American Grain Co., Inc.

Ian P. Carvajal–Zarabozo, Saldana & Carvajal, San Juan, David P. Karcher, Underwood, Karcher & Karcher, Miami, FL, for Puerto Rico Ports Authority, CCC Underwriters.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court are Defendants' motions for attorney's fees, bills of costs, and motion requesting the filing of an appeal bond. Plaintiff has filed its opposition. Defendants are Puerto Rico Ports Authority ("PRPA") and Procesadora de Granos, Inc. ("Programos"). The Court entered judgment for Defendants in this matter, Dkt. No. 200, on July 21, 1999 following a nine-day bench trial.

## DISCUSSION

### I. Sanctions

PRPA and Programos have moved that the Court shift attorney's fees in this case, notwithstanding the "American Rule" on attorney's fees, because of Plaintiff Pan American Grain's ("Pan American") alleged bad faith in filing suit. The Court declines to shift fees, as Pan American's case was not brought in bad faith, presented triable issues of fact, and in the end turned on witnesses' credibility. See *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46–47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (requiring bad faith in the bringing of the case for the wholesale shifting of attorney's fees as an exercise of a court's inherent powers).

■ As PRPA and Progranos have both pointed out in their motions for attorney's fees, Pan American on several occasions engaged in behavior that was abusive of the discovery process and shameful to Pan American. While this behavior does not warrant the wholesale shifting of attorneys' fees in the case, it warrants the Court's strong disapproval and stiff sanctions. Pan American's actions in the course of discovery were disruptive of the orderly course of litigation, insulting to the dignity of the Court, and, most importantly, utterly lacking in civility. There is no excuse for such disregard of the principles of civility, one of society's most important virtues. This Court will not countenance such behavior.

The Court's power to levy sanctions on Pan American for its discovery abuses arises from two sources of authority. The first is Fed.R.Civ.P. 37(a)(4). The second is the Court's inherent power to sanction abuses of the discovery process. Under Fed.R.Civ.P. 37(a)(4), if a party applies to the court for an order compelling discovery, and the court grants the application, or the opposing party cooperates with the discovery request only after the application was made, the court shall impose sanctions. The Rule actually creates a presumption in favor of the imposition of sanctions under such circumstances. The Advisory Committee Notes explain that the Rule "requires that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified." Fed.R.Civ.P. 37(a)(4) advisory committee's note.

On several occasions, Defendant Puerto Rico Ports Authority ("PRPA") was forced to file motions for orders compelling discovery. These motions were granted on every occasion save one, in which the requested discovery was provided after the motion was filed. Thus, the provisions of Fed.R.Civ.P. 37(a)(4) apply. Before the Court can impose sanctions, the Court must afford the sanctioned party an opportunity to be heard. In this case, Plaintiff Pan American has had ample opportunity to be heard via its written sub-missions with respect to the award of attorneys' fees.[1]

■ If Pan American's actions during discovery were "substantially justified," then no award of sanctions should issue. Fed. R.Civ.P. 37(a)(4). Instead of being *substantially* justified, Pan American's failure to cooperate with PRPA's discovery requests was clearly without justification and served only to impede the discovery process and to make life as difficult as possible for PRPA. Accordingly, sanctions will issue from this Court in the form of PRPA's "reasonable expenses incurred in making the motion[s], including attorney's fees." Fed.R.Civ.P. 37(a)(4). These sanctions include the award of certain attorney's fees, but they are not to be confused with a wholesale shifting of fees.

The record shows that PRPA was forced to file a number of motions to compel discovery when Pan American should simply have complied with PRPA's discovery requests. First, PRPA filed two motions to compel the production of the *ITB Zorra;* this Court granted both of them. The two motions were an Urgent Motion to Compel Discovery, 95–1794, Dkt. No. 88, and an Urgent Motion to Compel Production of the *ITB Zorra,* 95–1794, Dkt. No. 100. Later, PRPA filed a Motion to Compel Discovery of Certified Financial Statements and Income Tax Returns, 95–1794, Dkt. No. 155. This Court never ruled on the motion, but Pan American only provided the requested discovery after PRPA filed the motion to compel. Finally, PRPA filed another Motion to Compel Discovery, 96–1499, Dkt. No. 85, with respect to some of its interrogatories. This Court granted PRPA's motion in a margin order and forewarned Pan American of "stiff sanctions."

Thus, as a sanction for Pan American's willful failure to cooperate in the discovery process, this Court imposes sanctions on Pan American in the amount of Defendant PRPA's reasonable expenses incurred in making the motions, including attorney's

---

1. The requirement of an opportunity to be heard in Rule 37(a)(4) is satisfied by either written submissions or oral hearing. Fed.R.Civ.P. 37(a)(4) advisory committee's note; see also, 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, et al., Federal Practice and Procedure § 2288, at 663–64 & n. 25 (1994).

fees.[2] Consequently, PRPA is hereby ordered to file with the Court, within thirty days hereof, an itemization of expenses, including attorney's fees, that it incurred in connection with these motions. These motions are set forth at 95–1794, Dkt. No. 88; 95–1794, Dkt. No. 100; 95–1794, Dkt. No. 155; 96–1499, Dkt. No. 85.

Rule 37(a)(4)'s provisions for sanctions arising from motions to compel discovery are not the sole source of the Court's power to sanction abusive discovery tactics. The Court also has inherent powers that enable it to enforce standards of conduct during discovery.[3] Thus, the Court is not without recourse when a party engages in inappropriate behavior that does not precipitate the filing of a motion to compel. When a party engages in conduct that merits sanctions, and "the Rules are [not] up to the task, the court may safely rely on its inherent power." *Chambers,* 501 U.S. at 50, 111 S.Ct. 2123.

Pan American's behavior at various points in the discovery process justifies the imposition of sanctions. The choice of an appropriate sanction is within the Court's sound discretion. *Chambers,* 501 U.S. at 44–45, 111 S.Ct. 2123. Accordingly, Pan American shall be sanctioned in the amount of attorney's fees spent by Defendants PRPA and Progranos because of Pan American's misbehavior. There are, however, two significant limitations on the Court's ability to impose attorney's fees against a party under the authority of its inherent powers. The first is that the sanctioned party must have an opportunity to be heard on the matter. See *Chambers,* 501 U.S. at 50, 111 S.Ct. 2123 (explaining that a court must "comply with the mandates of due process" in imposing

sanctions under its inherent power); *Media Duplication Services v. HDG Software,* 928 F.2d 1228, 1238 (1st Cir.1991) (saying in this Rule 11 case that before imposing punitive sanctions, a court must sometimes afford the sanctioned party an opportunity to be heard and must always comply with the demands of due process); *In re Cordova Gonzalez,* 726 F.2d 16, 20 (1st Cir.1984) (announcing that when a court imposes sanctions such as attorney's fees under its inherent power, the court must afford the sanctioned party notice and an opportunity for a hearing). Pan American's opposition to the imposition of attorney's fees is sufficient to satisfy the requirement of an opportunity to be heard, especially in light of the fact that the award of attorney's fees is not a case-dispositive sanction. See *Media Duplication,* 928 F.2d at 1238 (holding that "what process is due is, in part, a function of the type and severity of the sanction").

The second limitation is that the Court must make a finding of bad faith on the part of the sanctioned party. *Chambers,* 501 U.S. at 49, 111 S.Ct. 2123; *Whitney Bros. Co. v. Sprafkin,* 60 F.3d 8, 13 (1st Cir.1995); *Havinga v. Crowley Towing and Transp. Co.,* 24 F.3d 1480, 1490 (1st Cir.1994); *Jones v. Winnepesaukee Realty,* 990 F.2d 1, 5 (1st Cir. 1993). Plaintiff Pan American's bad faith is evident from its behavior at various points in the course of the litigation of this case. In other words, while the suit was not filed in bad faith, Plaintiff's conduct during this litigation left much to be desired.

Pan American engaged in bad-faith litigation tactics when it attempted to hide the identities of the two divers who inspected the *ITB Zorra* after the accident, Javier

---

2. These discovery-related motions were filed only by Defendant PRPA, not by Defendant Progranos.

3. Recognition of the courts' inherent powers dates from the earliest days of the Republic. Indeed, inherent or "implied" powers "cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers,* 501 U.S. at 43, 111 S.Ct. 2123 (quoting *United States v. Hudson,* 7 Cranch 32, 34, 3 L.Ed. 259 (1812)). Inherent powers find their justification in "the control necessarily vested in courts to manage their own affairs so as to achieve the

orderly and expeditious disposition of cases." *Id.* (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). The First Circuit also adheres to this view. See, e.g., *In re Villa Marina Yacht Harbor, Inc.,* 984 F.2d 546, 548 (1st Cir.1993); *Zebrowski v. Hanna,* 973 F.2d 1001, 1003–04 (1st Cir.1992); *United States v. Palmer,* 956 F.2d 3, 7 (1st Cir.1992); *R.W. Intern. Corp. v. Welch Foods, Inc.,* 937 F.2d 11, 19–20 (1st Cir.1991); *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.,* 771 F.2d 5, 11–12 (1st Cir.1985).

Marrero and Gordon Welch. This caused PRPA to have to undertake considerable investigation to find the divers. PRPA is hereby ordered to file with the Court, within thirty days hereof, an itemization of expenses, including attorney's fees, that it incurred in connection with this investigation.

Pan American also attempted to cover up the identity of one of the *ITB Zorra*'s crew members, a Roger Rosaldes. PRPA was thus required to find out for itself Mr. Rosaldes' precise role on the ship. PRPA is hereby ordered to file with the Court an itemization of expenses, including attorney's fees, that it incurred in connection with this investigation.

Pan American's bad-faith activities increased in severity during the December 1997 inspection of the *ITB Zorra* by PRPA. During that inspection, PRPA discovered that Pan American had installed a hidden camera and microphone for the purpose of recording the conversations of PRPA's counsel. Again, PRPA is hereby ordered to file with the Court, within thirty days hereof, an itemization of expenses, including attorney's fees, that it incurred in connection with this incident.

Both PRPA and Progranos were adversely affected by Pan American's removal of the *ITB Zorra*'s fuel delivery system prior to the first inspection of the ship. This spoliation of evidence is a clear instance of bad faith on the part of Pan American. Thus, both PRPA and Progranos are hereby ordered to file with the Court, within thirty days hereof, an itemization of expenses, including attorney's fees, that they incurred because of this incident.

Finally, Pan American's bad faith reached a crescendo when Jose Gonzalez, President of Pan American, became violent immediately prior to his deposition on August 28, 1998. Mr. Gonzalez approached the video equipment set up for his deposition, pulled the cables from the camera, assaulted the video operator, and threw a cup of hot coffee at counsel for PRPA. Clearly, bad faith is self-evident in such uncivilized behavior. Both PRPA and Progranos expended valuable time and resources in dealing with this incident. Accordingly, PRPA and Progranos

shall be awarded the attorney's fees that they expended as a result of Mr. Gonzalez' tantrum. PRPA and Progranos are hereby ordered to file with the Court, within thirty days hereof, an itemization of expenses, including attorney's fees, that they incurred in connection with this incident.

■ For the Court to be able to impose sanctions in the form of attorney's fees, it must know the hourly rate that the attorneys in the case are charging their clients. From PRPA's filings, it appears that PRPA's attorneys are charging $100.00 per hour for their services. From Progranos' filings, it appears that Progranos' attorneys are charging $150.00 per hour and $200.00 per hour, depending on the partnership status of the attorney involved. In Pan American's Opposition to Defendant Procesadora de Granos Inc.'s Motion Requesting Attorney's Fees, 96–1499, Dkt. No. 219, Pan American alleges that Progranos' attorneys are only charging Progranos between $65.00 and $75.00 per hour. In Progranos' Reply to Plaintiff's Opposition, 96–1499, Dkt. No. 238, Progranos does not deny that its attorneys are actually charging only $65.00 to $75.00 per hour. Instead, Progranos simply asserts that "these billing arrangement are in general terms, based on the large volume of work performed .... That does not imply that those rates accurately reflect the value of the legal services performed by Pinto–Lugo & Rivera." The Court is has no intention of granting Progranos attorney's fees at the hourly rate that its attorneys believe their time to be worth. Attorney's fees shall only be granted at the rate actually charged. Accordingly, both Progranos and PRPA are hereby ordered to submit filings making clear exactly what hourly fee they are being charged by their attorneys in this case.

In summary, PRPA shall file with the Court, within thirty days hereof, an itemization of expenses, including attorney's fees, that it incurred in connection with the motions set forth at 95–1794, Dkt. No. 88; 95–1794, Dkt. No. 100; 95–1794, Dkt. No. 155; 96–1499, Dkt. No. 85; the investigation into the identities of the divers who inspected the *ITB Zorra;* and the hidden-camera incident during the December 1997 inspection of the

*ITB Zorra.* Both PRPA and Progranos are hereby ordered to file with the Court, within thirty days hereof, an itemization of expenses, including attorney's fees, that they incurred in connection with Pan American's removal of the *ITB Zorra's* fuel delivery system prior to the first inspection of the ship and in connection with Mr. Gonzalez' tantrum.

## II. Costs

Under Fed.R.Civ.P. 54(d)(1), "costs other than attorney's fees shall be allowed as of course to the prevailing party ...." Thus, all that remains to be determined is which items claimed as costs by the prevailing party shall be allowed and in what amounts. 28 U.S.C. § 1920 sets out the basic categories of costs that a court may allow. These include "(1) [f]ees of the clerk and marshal; (2)[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3)[f]ees and disbursements for printing and witnesses; (4)[f]ees for exemplification and copies of papers necessarily obtained for use in the case; (5)[d]ocket fees under section 1923 of this title; (6)[c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C.A. § 1920 (West 1994).

### Service of Process

Defendants PRPA and Progranos seek to recover as costs money spent on process server fees. PRPA seeks to recover $1,469.00, and Progranos seeks to recover $2,723.99. Pan American objects to the taxation of costs in these amounts on the grounds that fees for service of subpoenas should only be taxed in the amount of what a marshal would have charged, not what a private server charged. Pan American further objects on the grounds that service fees should only be taxed as costs for witnesses who actually testified at trial.

■ 28 U.S.C. § 1920(1) authorizes costs for service of subpoenas when effected by a marshal, but there is no specific statutory allowance for costs when private servers are used. At least in this Court, though, the law is clear on the allowance of the fees of pri-

vate servers as costs. This Court has unequivocally stated that the fees of private servers are properly taxed as costs "in light of the trend toward substitution of private process servers for the U.S. Marshals Service." *Riofrio Anda v. Ralston Purina Co.,* 772 F.Supp. 46, 55 (D.P.R.1991).

Pan American contends that fees for service of subpoenas can only be taxed as costs for witnesses who testified at trial. PRPA and Progranos argue that fees for service of subpoenas can be taxed for any witness who was subpoenaed in good faith and whose testimony was material to the issues in the case, regardless of whether the witness actually testified at trial. Having encountered an absence of First Circuit case law on the issue, the Court finds persuasive on this issue the standard applied to the taxation as costs of witness fees.

■ This standard is simply that

"[o]rdinarily, no fee may be taxed for someone who comes to the courthouse but does not testify at the trial, the presumption being that the person was not a necessary witness. But this is no more than a presumption and can be overcome if it appears that a court order or some other extrinsic circumstance rendered that testimony unnecessary."

10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2678, at 467–68 (1998). Hurricane Georges rendered unnecessary the testimony of four of PRPA's witnesses on the originally-planned September 21, 1998 trial date. It is not clear whether they would have testified had the trial been held on that day. Still, these four witnesses' testimony was not needed at that time because of an extrinsic circumstance, namely the hurricane. Thus, PRPA shall recover fees for service of process for these four witnesses, a total of $360.00.

■ Other than Hurricane Georges, PRPA and Progranos have failed to allege that a court order or other extrinsic circumstance rendered some of their witnesses' testimony unnecessary. Thus, fees for service of process shall be allowed only for those

witnesses who testified at trial on behalf of Defendants.

Progranos shall only be allowed to recover the costs of service of process on witnesses Carlos Garcia Padilla and Alberto Umpierre, for a total of $195.42. PRPA shall be allowed to recover costs for service of process on witnesses Javier Marrero and Gordon Welch, for a total of $564.00.

### Transcripts

Section 1920(2) allows a court to tax as costs court reporter fees for any part of the transcript "necessarily obtained for use in the case." 28 U.S.C.A. § 1920(2) (West 1994). While, like other varieties of costs, the award of transcript costs is within the discretion of the trial court, *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 232, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964), courts have developed standards on the topic. For the recovery of costs, the transcript need not have been essential to the progress of the litigation, but it must have been " 'necessary' to counsel's effective performance or the court's handling of the case." 10 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2677, at 438–39 (1998).

In this case, all of the parties agreed to share the costs of daily transcripts throughout the trial. Further, the trial involved complex factual issues and hinged on the credibility of various witnesses' testimony on technical matters. See 10 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2677, at 441, n. 11 (1998). Finally, the case was tried to the bench, not a jury, and as a result, the court required the parties to submit proposed findings of fact. See *Id.* at 442–43, n. 14 & 15. These factors weigh in favor of allowing Defendants to recover the cost of daily trial transcripts.

On the other hand, Defendants had ample representation during trial, and their attorneys could have taken day-to-day notes on the proceedings. See 10 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2677, at 438–39, n. 4 (1998). Further, the proposed findings of fact were not due until 45 days after the conclusion of the trial. Finally, allowing a prevailing party to recover the cost of a *daily* transcript is an extraordinary step. See *Id.* at 447. These factors weigh against allowing Defendants to recover the cost of a daily trial transcript.

Because of the several factors counseling the award of transcript costs to Defendants, PRPA and Progranos shall recover the cost of transcripts in this case. Because of the several considerations counseling the opposite, though, Defendants shall only recover these costs at the conventional rate of $1.50 per page, not at the premium rate charged for daily transcripts. To prepare post-trial proposed findings of fact, Defendants had no need for a *daily* transcript. This was merely a luxury, for the convenience of counsel. See 10 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2677, at 440, n. 9 (1998). On the other hand, the complexity of the case made virtually indispensable at least·some form of transcript of the trial proceedings. Thus, PRPA shall recover transcript costs of $991.00, and Progranos shall recover transcript costs of $991.00.

### Witness Fees

PRPA and Progranos seek to recover witness fees for witnesses who attended the trial. The recovery of witness fees as costs is authorized by 28 U.S.C. § 1920(3), and 28 U.S.C. § 1821 sets out the contents of disbursements to witnesses.

PRPA seeks to recover witness fees for Wayne Watson, Manuel Dos Santos, Ricardo Suarez, Javier Marrero, Gordon Welch, Robert Camuccio, and Harvey Gurland. PRPA's request for the recovery of witness fees of a total of $120.00 for witnesses Watson, Dos Santos, and Suarez is not well taken by the Court. These witnesses, while present at the trial, did not testify for PRPA. Once again, the standard for the award of witness fees is that

"[o]rdinarily, no fee may be taxed for someone who comes to the courthouse but does not testify at the trial, the presumption being that the person was not a necessary witness. But this is no more than a presumption and can be overcome if it

appears that a court order or some other extrinsic circumstance rendered that testimony unnecessary."

10 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2678, at 467–68 (1998). Since these witnesses did not testify for PRPA at trial, the presumption arises that they were not necessary to PRPA. PRPA has not shown that a court order or other extrinsic circumstance rendered their testimony unnecessary. Accordingly, PRPA shall recover no fees for these three witnesses.

 PRPA seeks $1,702.90 in costs for witness Javier Marrero for subsistence, lodging, travel, and local transportation. The award of costs for witnesses is a discretionary matter for the court. *Farmer*, 379 U.S. at 232, 85 S.Ct. 411. Pan American, in its opposition to PRPA's bill of costs, points out several irregularities in PRPA's bill of costs. First, included in Mr. Marrero's costs is an airline ticket for his wife. The travel costs in 28 U.S.C. § 1821 are for witnesses, not witnesses' family members. Thus, Mr. Marrero's wife's airline ticket of $503.40 ($418.40 + $85.00 "for change of flight") is not an allowable cost. Second, Mr. Marrero's costs include the rental of a car for $79.90. Section 1821 allows costs for travel to the courthouse via common carrier, but the use of a rental car for the witness' convenience during his attendance is not within the contemplation of § 1821. Third, Pan American contests a $20 taxicab fare. Contrary to Pan American's contention, taxicab fare to Old San Juan is an allowable expense, as § 1821 provides for "taxicab fares between places of lodging and carrier terminals." Mr. Marrero's place of lodging, the Hotel El Convento, is in Old San Juan. Fourth, Pan American asserts in its opposition that Mr. Marrero's hotel expenses and subsistence should be limited to one person for two nights and one day. The Court, however, is in no position to evaluate this claim. This is due to the fact that PRPA has failed to document properly Mr. Marrero's expenses. PRPA has attached to its bill of costs a

number of checks payable to Mr. Marrero, "cash," and American Express. There is no indication of what these checks reimburse. There is also no documentation of what Mr. Marrero paid for his hotel or food. PRPA has attached one bill for $79.00 for a meal at Mr. Marrero's hotel, but it is not clear whether this included his wife's meal. Even if it did not, such an expensive meal is clearly outside the bounds of 28 U.S.C. § 1821.[4] Although the award of costs to the prevailing party is presumed, clear documentation of those costs is a must. See, e.g., *Howard v. Campbell Soup Co.*, 1985 WL 1355 (N.D.Ill. 1985) (requiring sufficient documentation of costs to allow the court to determine whether "charges were reasonable and necessary"). PRPA's "documentation [is] simply too vague and incomplete to allow . . . recovery." *Id.* Finally, PRPA seeks $539.20 for Mr. Marrero's lost wages for the day he testified. Lost wages are not recoverable because "[r]eimbursable costs for witnesses . . . are limited to $40 per day plus transportation expenses [under 28 U.S.C. § 1821]." *Lawyer v. 84 Lumber Company and 84 Associates, Inc.*, 1998 WL 111703 (N.D.Ill.1998). Accordingly, PRPA shall recover $40.00 for each of the three days "necessarily occupied" either by Mr. Marrero's testimony or his travel to Puerto Rico. 28 U.S.C.A. § 1821(b) (West 1994). Thus, PRPA shall not recover any of Mr. Marrero's expenses of $1,702.90, except for his $428.40 airline ticket ($343.40 + $85.00 "for change of flight"), $20.00 taxicab fare and $120.00 in statutory attendance fees, for a total of $568.40.

Next, PRPA seeks $2,118.00 for subsistence, lodging, travel, and local transportation for witness Gordon Welch. Pan American argues in its opposition that there is no basis for PRPA's claim that Mr. Welch's airline ticket cost $333.00. On the contrary, PRPA has enclosed with its bill of costs a copy of the airline ticket clearly stating a price of $333.00. PRPA shall also recover $120.00 in statutory attendance fees for the three days necessarily occupied either by Mr. Welch's testimony or his travel to Puerto Rico. 28 U.S.C.A. § 1821(b) (West 1994).

---

4. The Court notes that $20.00 of this meal is attributable to Mr. Marrero's consumption of four gin-and-tonics.

For the reasons set forth regarding Mr. Marrero's expenses, no other costs shall be recoverable by PRPA for Mr. Welch. PRPA shall recover a total of $453.00 for Mr. Welch.

PRPA seeks a total of $10,738.74 in costs for witness Robert Camuccio. Of that total, $120.00 is statutory attendance fees for three days. Mr. Camuccio only testified on two of those days. Pan American correctly points out that statutory attendance fees exist to compensate witnesses for their attendance at trial, not to compensate experts for their advice. See *Hurtado v. United States*, 410 U.S. 578, 93 S.Ct. 1157, 1161–63, 35 L.Ed.2d 508 (1973). Thus, the relevant inquiry is what Mr. Camuccio's role was on the day that he did not testify. PRPA's own motion says that Mr. Camuccio "attended and was available for consultation during three days." Attendance at trial means "necessary attendance." *Hurtado*, 93 S.Ct. at 1163. Attendance for the purpose of consultation is not necessary attendance within the meaning of 28 U.S.C. § 1821(b). Thus, PRPA shall recover statutory attendance fees of $80.00 for the two days on which he testified. PRPA shall also recover $40.00 statutory attendance fees for the third day for which PRPA seeks fees but only because Mr. Camuccio spent two days necessarily occupied by air travel to and from Puerto Rico. PRPA shall only recover $40.00 for these two days because PRPA only requests fees for a total of three days in the first place. Thus, PRPA shall recover a total of $120.00 for Mr. Camuccio. The remainder of the costs sought by PRPA for Mr. Camuccio are not recoverable because of a lack of specific, comprehensible documentation.

· Finally, PRPA seeks costs in the amount of $10,562.70 for witness Harvey Gurland. Two hundred-eighty dollars of this total is statutory attendance fees for seven days of "attend[ance] and availab[ility] for consultation." Again, Mr. Gurland only testified on one of those seven days. Accordingly, PRPA is entitled to only $40.00 in attendance fees for the day he testified plus $80.00 for the two days necessarily occupied traveling by air to and from Puerto Rico. PRPA seeks another $10,282.70 for subsistence, lodging, travel, and local transportation. Unfortunately, PRPA not only fails to document adequately these disbursements, but PRPA also attempts to include thousands of dollars of expert witness fees under the rubric of subsistence, lodging, travel, and local transportation. Accordingly, PRPA shall recover only $120.00 in attendance fees for Mr. Gurland.

PRPA shall recover $568.40 for Mr. Marrero, $453.00 for Mr. Welch, $160.00 for Mr. Camuccio, and $120.00 for Mr. Gurland. These amounts total $1301.40 in witness fees for all of PRPA's witnesses.

Progranos seeks to recover witness fees for Jaime Alvarez, Luis Faustino Perez, Carlos Garcia Padilla, Alberto Umpierre, and Constantine Costas Georgas. Progranos seeks only the statutory attendance fee for one day of attendance for Mr. Alvarez, Mr. Perez, Mr. Padilla, and Mr. Umpierre. This totals $160.00. Mr. Padilla and Mr. Umpierre are the only members of this group who actually testified for Progranos at trial. Since Progranos has not shown that Mr. Alvarez' and Mr. Perez' failure to testify was because of a court order or other extrinsic circumstance, Progranos shall only recover $80.00 for the witnesses who testified for Progranos, Mr. Padilla and Mr. Umpierre.

Progranos seeks a total of $7,293.00 in witness fees for Mr. Georgas. Of this total, $360.00 is attributable to statutory attendance fees for nine days of trial. Mr. Georgas testified on only one day and was "available for consultation" on the other eight days. Again, statutory attendance fees exist to compensate witnesses for their attendance at trial, not to compensate experts for their advice. See *Hurtado*, 93 S.Ct. at 1161–63. Attendance at trial means "necessary attendance." *Hurtado*, 93 S.Ct. at 1163. Attendance for the purpose of consultation is not necessary attendance within the meaning of 28 U.S.C. § 1821(b). Thus, PRPA can only recover statutory attendance fees of $80.00 for the two days on which he testified plus $80.00 for the two days necessarily occupied by air travel to and from Puerto Rico. The remainder of the $7,293.00 that Progranos seeks to recover is $6,933.00 for subsistence, lodging, travel, and local transportation. Once again, Progranos has completely failed

to document adequately these expenses. Progranos' records do not even reflect expenditures that add up to $6,933.00. Thus, the Court has no way of knowing how Progranos arrived at this number. Further, without descriptions and/or receipts for various individual expenditures that Progranos lists in its records, the Court has no means of determining "whether the charges were reasonable and necessary." *Howard*, 1985 WL 1355. Thus, Progranos shall only recover $160.00 for Mr. Georgas.

### Exemplification and Photocopy Fees

■■■■■ PRPA claims that it is entitled to recover $6,758.91 in exemplification and photocopying expenses under 28 U.S.C. § 1920(4). Under this statute, though, these costs can only be recovered if they were for exemplification and copies "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). The burden is on the party seeking to recover these costs to show that they were necessary. *Lawyer*, 1998 WL 111703. More specifically, "recording what documents were copied and explaining how the documents were used in the case is absolutely necessary before the Court can permit such an award." *Ramos v. Davis & Geck, Inc.*, 968 F.Supp. 765, 782 (D.P.R.1997).

■■■ PRPA's first item of copying costs is $801.50 for copies of PRPA's pleadings, motions, and discovery responses. While copies of documents that were actually filed with the Court meet the requirement of being necessarily obtained for use in the case, PRPA fails to explain why it needed as many as 17 copies of these documents. PRPA simply lists the documents that it copied and requests reimbursement for an average of 10 copies per document. Without any explanation of how these additional copies were used in the case, there can be no recovery for them. Thus, PRPA shall recover its costs for only one copy of each document, as presumably at least one copy was needed for filing with the Court. PRPA lists 92 documents at $0.10 per copy, for a total of $9.20.

■■■ PRPA's second item of copying expenses is $574.00 for copies used to create its trial exhibit binders. Pan American contests this amount on the grounds that the Court

should use its discretion to allow recovery only for exhibits that were admitted into evidence. This is too narrow a reading of the requirement that the copies be necessarily obtained for use in the case. Copies obtained for use in a binder of potential trial exhibits clearly satisfy this requirement. Further, there is no documentation problem because Pan American in its opposition agrees with PRPA's count of the number of copies included in a trial exhibit binder. The claim of $574.00 in costs, however, is the result of making five trial exhibit binders. PRPA has failed to explain why five binders were necessary to the case. Thus, PRPA shall recover its costs for only one binder: the one issued to the Court. PRPA shall recover $114.80 for the creation of its trial exhibit binder.

■■■ None of the remainder of PRPA's claims for the costs of copies and exemplifications shall be allowed. These claims are supported only by invoices and checks that set forth amounts paid for copies. There are no explanations of how the copies were to be used or why the copies were necessary to the case. Further, two invoices are each for 62 overhead transparencies at *$8.95 per copy*, for a total expenditure of $1,109.80. Besides the fact that there is no explanation of the necessity of these transparencies, such expensive and visually pleasing demonstrative devices are rarely necessary to one's case. See *Howard*, 1985 WL 1355. PRPA could have prepared standard photocopies for the Court. Making transparencies was "a matter of . . . counsel's choice and convenience, rather than [a necessary] expense." *Id.* Finally, PRPA requests $3,300.00 for "professional surveying services." While these services were presumably used to create one of PRPA's bathimetric exemplifications, PRPA fails to specify how this $3,300.00 was distributed between "the physical production [of the exhibit] and the expert witness research required to produce the exhibit." *Ramos*, 968 F.Supp. at 782. A prevailing party can only recover the costs of physically producing the exhibit. *Id.* Because PRPA does not break down these costs, recovery is denied.

Progranos seeks to recover $8,361.26 in costs for exemplification and photocopies. As the Court pointed out earlier, "recording what documents were copied and explaining how the documents were used in the case is absolutely necessary before the Court can permit such an award." *Ramos*, 968 F.Supp. at 782. Progranos' claims are supported only by invoices and checks that set forth lump sums paid for copies. There are no explanations of how the copies were to be used or why the copies were necessary to the case. Progranos shall recover none of these costs.

### Translations

The expenses associated with translating documents into English are costs that a court may tax in its discretion under 28 U.S.C. § 1920(6). *Ramos*, 968 F.Supp. at 783. PRPA claims that it spent $155.00 for translation services. PRPA documents these expenditures with invoices and checks. The standard for taxing translation costs is as follows:

> The Court will tax all reasonable costs associated with interpretation services rendered for compliance with Local Rule 108.1. The Court will also tax the costs of translation of all documents shown to be relevant to this litigation. It is incumbent on the plaintiffs, however, to explain the nature of the translation services for which they seek reimbursement.

*Bonilla v. Trebol Motors Corp.*, 1997 WL 178861 (D.P.R.1997); *rev'd on other grounds, Bonilla v. Volvo Car Corp.*, 150 F.3d 88 (1st Cir.1998). PRPA fails to show either that its translated documents were filed with the Court for the purpose of compliance with Local Rule 108.1 or that they are relevant to this litigation. In spite of this, PRPA shall recover its costs for translations, because the amount that PRPA seeks to recover is infinitesimal compared with the voluminous documentary evidence that this litigation involved.

Progranos seeks $317.13 in costs for its translations. Despite the fact that Progranos fails to demonstrate how its translated documents relate to the litigation, Progranos shall recover its translation costs for the reasons stated above.

### Depositions

Although there is no express statutory authorization for the taxation of deposition expenses as costs, courts have generally held that the cost of taking and transcribing depositions fits within [28 U.S.C. § 1920(2)]. *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 249 (1985). PRPA seeks to recover expenses associated with taking the depositions of several witnesses.

For witness Frank Browning, PRPA claims that it is entitled to recover $4015.62. This total includes $275.00 for the transcript, $2,480.00 for travel to and from the deposition, $730.92 in hotel expenditures, and $529.70 in video costs. The parties do not dispute that PRPA is entitled to recover the $275.00 in transcript costs. The First Circuit has held that "if depositions are either introduced in evidence or used at trial, their costs should be taxable to the losing party." *Templeman*, 770 F.2d at 249. On the other hand, if a deposition is not introduced into evidence or used at trial, "[i]t is within the discretion of the district court to tax deposition costs if special circumstances warrant it ...." *Id.* See also *Ramos*, 968 F.Supp. at 781. This Court refined this standard further when it held that for depositions not used at trial, "the determining factor is whether 'the deposition reasonably seemed necessary at the time it was taken.'" *Riofrio Anda v. Ralston Purina Co.*, 772 F.Supp. 46, 55 (D.P.R.1991) (quoting 10 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2676, at 424 (1998)). Mr. Browning's deposition was introduced into evidence at trial, and its transcript is thus taxable. In contrast, PRPA can not recover for its expenditures on travel or on hotels while traveling to take Mr. Browning's deposition. It is well settled that "[t]raveling expenses in relation to the taking of depositions are generally not taxed as costs, save in exceptional circumstances." *Riofrio Anda*, 772 F.Supp. at 55. No exceptional circumstances pertain here. Finally, PRPA shall recover none of its video costs. When a party recovers its costs for the transcript of a deposition, that party can not also recover costs for videotaping the deposition.

This is because "[a] videotaped deposition ... is taxable as a *substitute* for a stenographic transcript ...." *Commercial Credit Equipment Corp. v. Stamps*, 920 F.2d 1361, 1368 (7th Cir.1990) (emphasis added). Transcripts and videotapes generally can not both be necessary for use in the case. *Id.* at 1368–69. In summary, PRPA can only recover $275.00 in transcript costs for witness Frank Browning.

For witnesses William Vorus and Burnice Malpass, PRPA seeks $6,960.67 in deposition-related expenses. Of this total, $4,929.73 is attributable to travel expenses. As explained previously, these expenses are not recoverable. Thus, the only remaining expense is for deposition transcripts. This expense is allowable, as neither party disputes that these depositions were used at trial. PRPA shall recover $1,226.25 in transcript costs for witnesses Vorus and Malpass.

PRPA shall recover $634.50 in transcript costs for the deposition of witness Conrad Hilpert because this deposition was used at trial. For the deposition of witness Alain Seligman, PRPA shall recover $354.00 in transcript fees. Although Mr. Seligman's deposition was not used at trial, the taking of Mr. Seligman's deposition "reasonably seemed necessary at the time it was taken." *Riofrio Anda*, 772 F.Supp. at 55. This is borne out by the fact that PRPA obtained items at Mr. Seligman's deposition that it later used at trial.

For witness Peter Merrill, PRPA shall recover nothing. PRPA has failed even to present sufficient evidence for the Court to determine how much PRPA spent on the transcript of Mr. Merrill's deposition. The cost of Mr. Merrill's deposition is not itemized in the bill submitted by PRPA and is instead combined with other expenses. Absent basic data on the expenses arising out of Mr. Merrill's deposition, the Court is in no position to evaluate PRPA's request for costs.

PRPA shall recover only $830.00 for the deposition of witness Jack Mixer. PRPA's claimed $790.00 in videotape expenses is not allowable, as has been discussed. Additionally, PRPA claims that it spent $340.66 on service of a subpoena on Mr. Mixer. PRPA's documentation shows, however, that PRPA spent only $35.00 on service and spent the remainder on attorney's fees, telephone calls, and photocopies related to serving the subpoena. Thus, PRPA shall recover only $35.00 for service costs.

For witnesses Thomas Bauer and Russell Bellsome, PRPA shall recover a total of $107.00. The other $1,145.78 that PRPA claims for these witnesses was spent on travel and related items and is not recoverable.

The remainder of PRPA's deposition-related expenses for witnesses Conrad Hilpert, Alain Seligman, Peter Merrill, Jack Mixer, Russell Bellsome, and Thomas Bauer are attributable to travel, copies, oversized diagrams, and delivery expenses. None of these expenses are allowable as costs, as they have either not been shown to be necessary for use in the case or are simply categorically excluded from recoverable costs.

For the deposition of witness David P. Demers, PRPA seeks $4,277.58 in costs. PRPA shall recover $649.60 for the expense of obtaining the transcript of the deposition and $125.00 for the court reporter's attendance fee. 28 U.S.C.A. § 1920(2) (West 1994). See also 10 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2676, at 431 (1998). The remainder is the result of travel costs, costs of extra copies of the deposition transcript in various formats, and related costs. Travel costs are not recoverable for the reasons set forth in this opinion. As for extra copies of the deposition transcript, PRPA has failed to show that these copies were necessarily obtained for use in the case. Since these copies are duplicative of the original transcript, they were obtained only for the convenience of PRPA's attorneys, and their cost is not allowable. 10 Charles A. Wright Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2676, at 435 (1998).

PRPA seeks $1,477.50 for the deposition of witness Lawrence Thibault. Although Mr. Thibault's deposition was not used at trial or introduced into evidence, PRPA had reason to believe at the time of taking the deposition that Mr. Thibault

would be a key witness for Pan American at trial. Thus, the deposition "reasonably seemed necessary at the time it was taken." *Riofrio Anda*, 772 F.Supp. at 55. PRPA shall recover the court reporter's attendance fee of $375.00, as well as the cost of the transcript. The allowable cost of the transcript is only $229.50, not the $994.50 that PRPA claims. This is because PRPA shall recover only for the standard cost of a transcript, not for the for the premium that PRPA paid for an expedited transcript. An expedited transcript, without explanation from PRPA for its necessity, is a mere convenience for counsel. The remainder of the amount claimed by PRPA is attributable to the making of a tape copy, which is a duplicative expense, and an unexplained "exhibit expense."

For witnesses J. Arthur Waddington and Larry Strouse, PRPA shall recover transcript costs of $389.00. Although these depositions were not used at trial or introduced into evidence, PRPA had reason to believe at the time of taking the deposition that Mr. Thibault would be a key witness for Pan American at trial. Thus, the deposition "reasonably seemed necessary at the time it was taken." *Riofrio Anda*, 772 F.Supp. at 55. PRPA's travel expenses of $2,998.72 are not recoverable.

■ For witnesses James Michael Bennett, Jose Rivera Tollinche, and Jose Padilla, PRPA seeks to recover deposition costs of $2,600.00. For PRPA to recover these costs, PRPA must show either that these depositions were used at trial or introduced into evidence on the one hand, or that they reasonably seemed necessary when taken. PRPA alleges in its memorandum that the depositions of Mr. Rivera and Mr. Padilla were used for impeachment purposes at trial, while Pan American flatly denies this. PRPA shall not recover these deposition costs because it neither directs the Court to any point in the record to support its contention, nor does it allege that the depositions reasonably seemed necessary when taken. As for Mr. Bennett's deposition, PRPA simply alleges that it was "an indispensable part of the discovery process." This is not sufficient to satisfy the requirement that the de-

position reasonably seem necessary when taken, in other words that the deposition be "necessarily obtained *for use in the case.*" 28 U.S.C.A. § 1920(2) (West 1994) (emphasis added).

PRPA seeks to recover $4,170.74 for the depositions of witnesses Javier Marrero and Gordon Welch. There is no dispute that these depositions were used at trial. Thus, the cost of these depositions is allowable. PRPA shall only recover the transcript costs of $532.90 and $114.00, though, as the rest of PRPA's claimed costs are travel-related expenses.

For witness Jose Gonzalez, PRPA seeks to recover deposition costs of $589.50. Only $379.50 of this total is allowable as transcript costs, though. The remainder is attributable to video expenses, which are duplicative of transcript costs, as discussed previously.

For witness Harvey Gurland, PRPA seeks $666.08 in deposition costs. PRPA alleges in its memorandum that the deposition of Mr. Gurland was used for impeachment purposes at trial, while Pan American flatly denies this. PRPA shall not recover these deposition costs because it neither directs the Court to any point in the record to support its contention, nor does it allege that the depositions reasonably seemed necessary when taken.

For witnesses Larry Michael Hart, Wayne Watson, Frank Torres, Jose L. Rivera, Carlos Garcia Padilla, and Julian Ducat, PRPA seeks $2,708.50 in deposition costs. These witnesses' depositions were neither used at trial nor introduced into evidence. PRPA simply alleges that these depositions were "an indispensable part of the discovery process." This is not sufficient to satisfy the requirement that the deposition reasonably seem necessary when taken, in other words that the deposition be "necessarily obtained *for use in the case.*" 28 U.S.C.A. § 1920(2) (West 1994) (emphasis added). PRPA shall recover no costs for these depositions.

PRPA seeks $450.54 for copies of the depositions of witnesses Robert Camuccio, Richard W. Henderson, and Renan Lopez de Azua. These witnesses were deposed by Pan American, but PRPA seeks to recover the

costs of copies of the transcripts. Pan American does not dispute that PRPA is entitled to $145.50 for the deposition of Robert Camuccio, but PRPA may not recover for Mr. Henderson and Mr. Lopez de Azua. The depositions of these two witnesses were not used at trial or introduced into evidence, and PRPA has not alleged that copies of these depositions were necessary for use in the case.

PRPA seeks $926.75 for the depositions of witnesses Gerald Williams and Lamy Chopin. Only Mr. Chopin's deposition was used at trial, and Pan American does not contest that PRPA is entitled to deposition costs for this witness. PRPA can not recover for this witness, though, because it failed to submit documentation sufficient to allow the Court to determine what part of the total expenses for the two witnesses is attributable to Mr. Chopin. As for Mr. Williams' deposition, PRPA again merely alleges that this deposition was "an indispensable part of the discovery process." Thus, PRPA shall not recover costs for the deposition of either of these witnesses.

For witnesses Keith D. Morley, Frank Mason, and Augusto M. Gonzalez, PRPA seeks $1,325.06 in deposition costs. None of these witnesses' depositions were used at trial or introduced into evidence, and PRPA makes no showing of necessity for the taking of their depositions. Thus, PRPA shall not recover for these depositions.

Finally, for witnesses Jaime Acosta, Robert Kunkel, Edwin Geary, Miguel Acevedo, Miguel Bermudez, and Herman Sulsona, PRPA seeks a total of $71.10 for copies of deposition transcripts. None of these depositions were used at trial or introduced into evidence, and PRPA makes no showing of necessity for these copies. Further, PRPA submits no documentation to support its claimed expenditures. PRPA shall recover nothing for these copies.

Like PRPA, Progranos seeks to recover the costs associated with the depositions of several witnesses. For witness Frank Browning, Progranos seeks $458.15. Pan American does not dispute Progranos' entitlement to this sum. Thus, Progranos shall recover $458.15 for Mr. Browning's deposition.

Progranos seeks a total of $526.00 for the depositions of witnesses William Vorus and Burnice Malpass. Progranos admits that Mr. Malpass' deposition was financed by PRPA, but Progranos fails to document which part of the $526.00 expenditure is attributable to the deposition of Mr. Vorus. Because of this lack of documentation, Progranos shall not recover for either witness' deposition. Progranos seeks another $5,136.07 in travel-related expenses for these depositions, none of which is allowable.

For witness Jack Mixer, Progranos seeks $519.80 in deposition costs. Progranos used Mr. Mixer's deposition at trial. Progranos can only recover $414.80, however, as the remainder is attributable to non-recoverable video expenses. For witness Conrad Hilpert, Progranos seeks and shall recover $298.50, as Pan American does not object to this sum. For witness Alain Seligman, Progranos seeks $1,612.25 in deposition costs. Although Mr. Seligman's deposition was not used at trial or introduced into evidence, the taking of his deposition reasonably seemed necessary at the time of its taking. This is because Pan American led Progranos to believe leading up to trial that Mr. Seligman would be an important expert witness at trial. Progranos can only recover transcript costs in the amount of $786.00. This amount represents the cost of "Volume I" of Mr. Seligman's deposition. Progranos can not recover for Volume II because the cost of Volume II is combined with the cost of the deposition of witness Peter Merrill. Thus, the Court can not determine how much Progranos paid for Volume II. Finally, Progranos can not recover the remainder of its claimed $1,612.25 because it has failed to document these expenditures. Assuming that these are travel-related expenses, as seems reasonable based on other documentation, these amounts are not recoverable. For witnesses Russell Belsome and Thomas Bauer, Progranos seeks and shall recover a total of $107.00 for transcript costs. Pan American does not object to this recovery. Progranos also seeks and shall not recover $2,734.63 in travel-related costs.

Progranos seeks $597.60 for a copy of the deposition of witness Lawrence Thibault. Although Mr. Thibault's deposition was not used at trial or introduced into evidence, PRPA, the party that deposed Mr. Thibault, had reason to believe at the time of taking the deposition that Mr. Thibault would be a key witness for Pan American at trial. Thus, the deposition "reasonably seemed necessary at the time it was taken." *Riofrio Anda*, 772 F.Supp. at 55. Progranos clearly needed a copy of this important deposition. Thus, Progranos shall recover the cost of the copy, a total of $489.60. The remainder of the amount claimed by Progranos is attributable to the making of a tape copy, which is a duplicative expense, and an unexplained "exhibit expense."

For witness Manuel Dos Santos, Progranos seeks $172.50 in deposition costs. While Mr. Dos Santos' deposition was neither used at trial nor introduced into evidence, his deposition reasonably seemed necessary at the time that it was taken. This is because Mr. Dos Santos was the harbor pilot in charge of guiding the *Zorra* into Guanica Harbor. His testimony, at the time that he was deposed, no doubt seemed necessary to Progranos. Thus, Progranos shall recover $172.50 for this deposition.

Progranos seeks to recover $1,992.00 in deposition costs for witness Jose Gonzalez. Of this total, $1,891.00 is attributable to the cost of an expedited transcript. The allowable cost of the transcript is only $379.50. This is because PRPA shall recover only for the standard cost of a transcript, not for the for the premium that PRPA paid for an expedited transcript. An expedited transcript, without explanation from PRPA for its necessity, is a mere convenience for counsel. Finally, the remaining $102.00 in claimed deposition expenses are for a "Statement of Proceedings of Deposition Scheduled to be Taken of Jose Gonzalez on August 28, 1998." Progranos does not explain whether this is indeed a deposition transcript or some other document. At only six pages, it seems unlikely that this is a deposition transcript. Progranos shall not recover this amount.

### Postage and Courier Fees, Telecommunication Fees, and Computer–Assisted Research

■ PRPA seeks postage and courier fees in the amount of $3,480.44, telecommunication fees in the amount of $8,614.80, and computer-assisted research fees in the amount of $3,534.99. None of these expenses shall be awarded to PRPA as costs. As this Court has held regarding such costs, "[m]essenger services, faxes, telephone charges, postage, stamps, parking, and Westlaw charges are all out-of-pocket expenses and, therefore, not recoverable." *Ramos*, 968 F.Supp. at 783.

Progranos seeks $504.86 in postage and courier fees, $5,211.39 in telecommunication fees, and $2391.61 in computer-assisted research fees. For the reasons just mentioned, Progranos shall not recover any of these fees.

### Interpreter Fees

Progranos seeks to recover the costs of hiring interpreters to translate certain witnesses' trial testimony. This Court ordered that interpreters be used for all non-English speaking witnesses at trial. Further, 28 U.S.C.A. § 1920(6) expressly provides for the recovery of "compensation of interpreters." See also *Bonilla v. Trebol Motors Corp.*, 1997 WL 178861 (D.P.R.1997) (interpreting § 1920(6)); *rev'd on other grounds, Bonilla v. Volvo Car Corp.*, 150 F.3d 88 (1st Cir. 1998). On the other hand, "[t]he [prevailing party is] still put to the task of proving the necessity and reasonableness of the costs they ask the Court to tax." *Id.* Since the requested costs are for interpretation of testimony given at trial, the Court has no doubt that these costs are necessary and reasonable. Accordingly, Progranos shall recover $712.50 for interpreter fees.

In summary, the following costs shall be recovered by Defendants:

A. PRPA

| | |
|---|---|
| 1. Service of Process | $ 924.00 |
| 2. Transcripts | $ 991.00 |
| 3. Witness Fees | $ 1261.40 |
| 4. Exemplification and Photocopy Fees | $ 124.00 |
| 5. Translations | $ 155.00 |
| 6. Depositions | $6,401.75 |
| 7. Postage and Courier Fees, Telecommunication Fees, and Computer–Assisted Research | $ 0.00 |

 

**TOTAL COSTS: $9,857.15**

B. Progranos
| | |
|---|---|
| 1. Service of Process | $ 195.42 |
| 2. Transcripts | $ 991.00 |
| 3. Witness Fees | $ 240.00 |
| 4. Exemplification and Photocopy Fees | $ 0.00 |
| 5. Translations | $ 317.13 |
| 6. Depositions | $3,106.05 |
| 7. Postage and Courier Fees, Telecommunication Fees, and Computer–Assisted Research | $ 0.00 |
| 8. Interpreter Fees | $ 712.50 |

**TOTAL COSTS: $5,562.10**

### III. Appeal Bond

PRPA and Progranos have both filed motions requesting that Pan American be required to file a bond for costs on appeal under Fed. R.App. P. 7. Rule 7 leaves to the discretion of the district court in a civil case whether to require the filing of a bond for costs on appeal. The Advisory Committee Notes on Rule 7 explain that the rule leaves both the question of the need for a bond and the amount of the bond in the district court's discretion. Fed. R.App. P. 7 advisory committee's note. As Rule 7 states, the purpose of the bond requirement is "to ensure the payment of costs on appeal." Fed. R.App. P. 7.

 With this purpose in mind, and the limited range and magnitude of taxable costs on appeal set forth in Fed. R.App. P. 39(e), the Court finds no reason to require Pan American to file a bond to secure payment of costs on appeal. Pan American is a corporate entity easily capable of paying such a small sum should it be unsuccessful on appeal. Neither PRPA nor Progranos has alleged that Pan American can not be trusted to pay this sum.

PRPA and Progranos have requested that Pan American file a bond in the amount of $75,000.00. This sum simply does not correlate with the taxable costs under Rule 39(e) that are likely to accrue on appeal. Further, "[d]efendants have made no attempt ... to justify their request for a bond in [that amount]." *Lundy v. Union Carbide Corp.*, 598 F.Supp. 451, 452 (D.Or.1984). While Plaintiff's appeal is unlikely to meet with success, PRPA and Progranos' request that Pan American be required to file an appeal bond is hereby denied for the reasons stated above.

**IT IS SO ORDERED.**